## DALLAS RAILWAY & TERMINAL COMPANY V. A. F. GUTHRIE.

No. A-1555. Decided April 7, 1948.
Rehearing overruled May 12, 1948.
(210 S. W., 2d Series, 550.)

*Burford, Ryburn, Hincks & Ford, Bruce Graham* and *Howard Jensen,* all of Dallas, for petitioner.

*Touchstone, Wight, Gormley & Touchstone,* and *O. O. Touchstone,* all of Dallas, for respondent.

Mr. Justice Simpson delivered the opinion of the Court.

A. F. Guthrie was driving his automobile along one of the public streets of the City of Dallas on October 19, 1945, when he was struck and seriously injured by a Dallas Railway & Terminal Company street car. He sued for damages growing out of this collision and recovered a judgment for $42,500.00. The Court of Civil Appeals found the damages awarded for hospital expenses excessive in the sum of $5,000.00, which Guthrie remitted, and the judgment of the trial court was accordingly reformed and affirmed. 206 S. W. (2d) 638.

Included in the damages recovered was the sum of $27,500.00 for loss of earning capacity. Testimony of an accountant was elicited, over the company's objection, as to what, if Guthrie had not been injured, the profits from a business the latter was operating would have been over a period of 28 years, the life expectancy of an average man of Guthrie's age. The company assigns the following errors in connection with the letting in of this proof:

(1) Allowing the witness M. W. George to express his opinion that Guthrie's profits from his business would have been $427,-837.00 over a period of 28 years; and
(2) Allowing this witness to testify as to the profits of Guthrie's business based upon records which were not properly proven.

George testified that he had prepared Guthrie's income tax returns from 1941 to 1946 and was familiar with Guthrie's records, which consisted merely "of the deposit of checks and of invoices" that had not been posted to any book. Original records for the years 1945 and 1946 were introduced in evidence. George testified that he did not keep the records but merely examined them. Those for the years 1941 through 1944 were not produced, nor was the failure to produce them explained. The circumstances under which and by whom these records as well as those for 1945 and 1946 were kept were not shown. George testified that Guthrie's business made a net profit of $3,408.29 in 1945 and $1,851.33 in 1946. George was also asked the following questions and made the following answers:

"Q. In other words, based on your examination of these records as I understand you did examine them and make returns since the year 1940, at the rate that that business was increasing, can you tell the jury, give them some light on what the profits of that business would have been in the future if Mr. Guthrie had not been injured?

"A. I can't give you a definite percentage on that because I haven't worked it out.

"Q. Your best approximation?

"A. I would say it was increasing at the rate of about 10 per cent per year net profit.

"Q. If you need to do any figuring in order to give the jury your best judgment about what it would have increased to in the future, it is in evidence here a man of his age, at the time he was injured, had a life expectancy of 28 years. If you need to do any calculations or figuring, I wish you would do it and give the jury your best judgment at the rate of increase you observed in that business, what it would have been as to net profit during that period of time.

"A. That would be a little difficult to figure, sir, for the reason that would compound each year. In other words, 10 per cent increase yearly over a period of 28 years would compound, in other words, on a $3,000.00 earning for the year 1946, then for 1947, it would be $3,300.00, for the year 1948, would be $3,630.00, and right on up for a period of 28 years.

"Q. Is that the way it would actually work?

"A. Yes sir.

"Q. I wish you would make a calculation and give the jury your best approximation of it.

"A. As I previously stated, it would approximate 10 per cent increase over a period of 28 years. The total profits would be $427,837.00, if I have made no error."

The inadmissibility of this testimony is patent. This witness was permitted to give his calculation and estimate of what, if Guthrie had not been injured, his business would have earned over a span of 28 years, basing his conclusions largely upon records which were not produced in court and which were kept by undisclosed persons under unexplained circumstances. Adequate objections were made to the introduction of all this proof and overruled.

■ The need for authentication of such records as these is thus stated in McCormick and Ray, Texas Law of Evidence, sec. 557: "It is obvious that account-books and entries therein are not admissible in the absence of some showing by preliminary evidence as to what the proffered books and entries are and under what circumstances they have been kept. The books do not 'prove themselves.' "

The text from which this quotation is taken then develops the various means of making the preliminary proof concerning accounts and books, all of which are widely known and universally accepted, but none of which were resorted to by Guthrie in proving up these records. So, upon the basis of records from 1941 to 1944 which were neither produced nor accounted for, and upon the accounts for 1945 and 1946, which were produced but not authenticated, the witness George was allowed to calculate and estimate that Guthrie's business, if the latter had not been injured, would have yielded profits of over four hundred thousand dollars in 28 years. Obviously, this testimony was extremely conjectural and speculative. And what is more, the calculations and approximations to which the accountant testified, based as they were upon unproven and unproduced records, were not susceptible of an adequate cross-examination. The attorneys for the company had no access to Guthrie's accounts from 1941 to 1944, and consequently could not subject them to an audit of their own nor intelligently interrogate Guthrie's accountant as to the means, extent and accuracy of his knowledge when he estimated that Guthrie's business was showing larger profits year by year. The hurtful and prejudicial effect of this testimony on the company's substantial rights plainly ap-

pears. Because of its erroneous admission, the cause must be reversed.

■■ Guthrie's counsel urges in effect that the evidence, even if improperly let in, was harmless. In oral arugment, it was asserted that since Guthrie's business made some $3,400.00 in 1945 but was going down so badly since Guthrie's injury, it would have to close about March, 1947, and further, since Guthrie's life expectancy was some 28 years, the anticipated profits from his business, had he not been injured, would have been more than three times the damages of $27,500.00 allowed. In this connection, it is pertinent to observe that Guthrie's measure of damages was not the loss of profits from his business, but the diminution in his own earning capacity directly resulting from the injuries he sustained in the collision. True it is that the loss of profits from a personally operated business may be received in evidence and considered in determining the extent of the injured party's diminished capacity to earn. Dallas Railway & Terminal Co. v. Darden (Tex. Com. App.) 38 S. W. (2d) 777. The character and size of the business, the capital and labor employed, the extent and nature of Guthrie's own participation in it and the profits the business earned are all relevant factors of probative worth in enabling the jury to appraise the value of Guthrie's personal services. But the lost profits of the business are not the proper measure of recovery. And to multiply the profits the business made the year before Guthrie was injured by the life expectancy of an average man his age and thus produce an amount over three times the jury's estimate of his lost earning capacity does not at all demonstrate as harmless the reception of the speculative approximations by the accountant, based largely upon records which were neither produced nor authenticated, to the effect that, had Guthrie not been injured, this business would have earned over four hundred thousand dollars in a span of 28 years. The letting in of this testimony cannot be held harmless error.

■ The company also makes the point that the special issue submitting sole proximate cause to the jury improperly cast the burden of proof upon the company when it should have been placed upon Guthrie. The burden of proof on this issue is upon the plaintiff, and it is assumed that upon another trial the presiding judge will, if sole proximate cause is raised, frame the special issue submitting it so as to place the burden of proof upon him. Hicks v. Brown, 136 Texas 399, 151 S. W. (2d) 790. Also see Rule 279, Texas Rules of Civil Procedure.

The judgments of the Court of Civil Appeals and the *trial* court are reversed and this cause is remanded to the district court for a new trial.

Opinion delivered April 7, 1948.

Taylor, Associate Justice, not participating.

Rehearing overruled May 12, 1948.