### J. H. HUBBARD & SON, Inc., et al. v. GREER.

#### No. 10095.

Court of Civil Appeals of Texas. Austin.

Feb. 4, 1953.

Joseph M. Shelton, Dallas, for appellants.
David A. Witts, Dallas, for appellee.

GRAY, Justice.

Appellee, a certified public accountant engaged in that business in Dallas, Texas, sued appellants to recover $1562.50 for professional services performed for them. The suit was brought as a suit on a sworn account. Appellee alleged that his claim was for goods, labor, and personal services rendered; that more than thirty days had expired since his claim was presented to appellants, that he had employed attorneys to represent him, and sued for an attorney's fee of $500.

Appellee further alleged that appellants promised to pay the price charged for the services, or, in the alternative, that they agreed to pay the usual and customary prices for such services, that the prices charged are the usual and customary prices in Dallas, and that the services were reasonably worth the price charged which was at the rate of $7 per hour for a certified public accountant, $4 per hour for a senior accountant and $2 per hour for typing and secretarial time.

Upon a jury trial appellee recovered a judgment for $1247.50 and an attorney's fee of $450.

Appellants say that the trial court erred in admitting in evidence appellee's exhibits numbers 4 to 28, both inclusive, and the testimony in connection therewith because the exhibits were not fair on their face in that they did not show who did the work, the rate to be charged or that the work was actually performed for the corporate defendants.

Appellee had seven employees, and the exhibits were referred to as time slips. As to the time slips appellee testified:

"Q. Do you keep time records in the regular course of your business? A. I do.

"Q. Do you keep them for every client? A. Yes, I keep them for work done for every client, and for every employee.

"Q. Did you keep them for work done by these three clients? A. I did.

"Q. Will you explain what your time records are, and how they are kept? A. The time records are records of the time and days on which the services are performed for each client, and we keep them on a small form that I designed for that purpose, in my office, which are turned in to me semi-monthly by my employees, and on which I pay their salaries. All employees are on an hourly fee salary, and if they work one hour overtime in the course of a pay period, they are paid for that time on the basis of these time records. They are further used in determining services rendered, and charges to be made to clients.

\* \* \* \* \* \*

"Q. (By Mr. Witts) I hand you forty-five slips of paper. Will you look and see if you can identify those slips? A. Those are time records prepared in my office by my employees and myself, on the time spent and work involved in this lawsuit."

These time slips were initialed by the "auditor" who performed the work, and appellee said the slips represented his record of original charges against the client for work performed. Appellee identified each exhibit as a record of services performed for one or the other of the corporate defendants, and as giving the date of the services, the amount of time on each and whether the service was performed by himself or by one of his employees. The exhibits were introduced into evidence separately. Appellants had and exercised their right to interrogate appellee as to the extent and the accuracy of his knowledge of the contents of each. In Dallas Railway & Terminal Co. v. Guthrie, 146 Tex. 585, 210 S.W.2d 550, 551, the court considered testimony relative to records not produced in court and which were kept by undisclosed persons under circumstances not explained. In reaching its conclusion that the testimony was not admissible the Court said:

"The need for authentication of such records as these is thus stated in McCormick and Ray, Texas Law of Evidence, § 557: 'It is obvious that account-books and entries therein are not admissible in the absence of some showing by preliminary evidence as to what the proffered books and entries are and under what circumstances they have been kept. The books do not "prove themselves." '

"The text from which this quotation is taken then develops the various means of making the preliminary proof concerning accounts and books, all of which are widely known and universally accepted, but none of which were resorted to by Guthrie in proving up these records."

██ . In the case before us the time slips were produced in court, they were identified and their correctness vouched for by appellee who was the owner of the business, who had authority to, and did, supervise all transactions had in the course of that business, and to whom the time slips were delivered as business records. We think the time slips, when so identified and their correctness so vouched for, were admissible in evidence. Heid Bros. v. Commercial Nat'l Bank of Hutchinson, Kan., Tex.Com.App., 240 S.W. 908, 24 A.L.R. 904. Art. 3737e, Vernon's Ann.Civ.St.

In answer to a special issue the jury found $450 to be a reasonable attorney's fee for the services of appellee's attorney. Appellants complain this finding is not supported by any evidence.

██ Appellee sued for $1562.50 and an attorney's fee of $500. It is not controverted that the suit was for services rendered and labor done nor that the claim was

presented thirty days prior to the filing of the suit. Under these conditions in the event of a recovery of any amount of the claim presented an additional recovery of a reasonable attorney's fee was authorized. Art. 2226, Vernon's Ann.Civ.St.

Appellee's petition was signed by an attorney who conducted the trial which was vigorously contested and lasted three days before a jury. Under these circumstances "it would rest with the court or jury trying the case to determine upon all the facts, taking into consideration the aggregate amount of the claims and the time employed in procuring the testimony and trying the case, what is a reasonable attorney's fee for the services rendered". Gulf, C. & S. F. Ry. Co. v. Pearlstone Mill & Elevator Co., Tex.Com.App., 53 S.W.2d 1001, 1004.

The record before us shows the amount of the claim, the testimony introduced at the trial, the time consumed in presenting the case and securing the jury's verdict. From this record and our own common knowledge we conclude that an attorney's fee of $450 is reasonable and that the trial court properly allowed appellee a recovery of that amount. Southland Life Ins. Co. v. Norton, Tex.Com.App., 5 S.W. 2d 767; Boyd v. Guinn, Tex.Civ.App., 44 S.W.2d 1112; Farrow v. Farrow, Tex.Civ. App., 238 S.W.2d 255.

During the cross-examination of appellants' president appellee's counsel inquired as to the employment of a bookkeeper. The bookkeeper was identified and the length of his employment stated. Appellee's counsel then asked: "Isn't it a fact that he had to sue you to collect on that contract?" An objection was interposed to the question, it was sustained and the question was not answered. No request that the question be withdrawn or that the jury be instructed not to consider it was made.

Appellants contend that the asking of the question was so prejudicial as to deny them a fair and impartial trial and to require a reversal of this cause.

We agree that the question was improper, yet from our examination of the entire record we think the substantial rights of appellants were not affected. Neither is it made to appear that the mere asking of the question influenced the jury to return a verdict that it otherwise would not have returned.

The jury's verdict was for $1246.50 and $450 attorney's fee. Both amounts were less than the amounts sued for. The evidence before the jury was ample to support the verdict returned. We think the error must be held to be harmless. 3–B, Tex.Jur., Sec. 1037, p. 643.

For the purpose of showing that their rights were prejudiced by the asking of the above question appellants presented their motion for a new trial, alleged jury misconduct and attached the affidavits of jurors. Upon the hearing of this motion four jurors were placed on the witness stand and testified. The trial court after hearing the evidence overruled the motion. Findings of fact were not requested and none were filed.

One juror testified that the necessity of suing the defendants to collect a debt was discussed by the jury; one said that to the best of his memory it was discussed but said "I am not certain of that"; another said the question might have been discussed "I don't remember," and the fourth said he did not hear the question discussed.

The trial court having overruled the motion for new trial after hearing the jurors testify was, we think, necessarily a finding by him that the alleged misconduct did not occur, or that it probably did not result in injury to appellants, or that appellants had failed to discharge the burden resting on them to show the alleged misconduct occurred and that it probably resulted in injury to them. Rule 327, Texas Rules of Civil Procedure. At any rate under the facts before us the decision of the trial court on the issue is final. Barrington v. Duncan, 140 Tex. 510, 169 S.W. 2d 462.

The judgment of the trial court is affirmed.

Affirmed.