**GREYHOUND LINES, INC., Appellant,**

v.

**Juanette DUHON et al., Appellees.**

**No. 15363.**

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Oct. 31, 1968.

Orgain, Bell & Tucker, Beaumont, John G. Tucker, George H. Kolb, Beaumont, of counsel, for appellant.

Woody & Rosen, Clyde W. Woody, Marian S. Rosen, Houston, for appellee.

PEDEN, Justice.

Greyhound perfected this appeal from a judgment based on a jury verdict in favor of Mrs. Juanette Duhon and Mrs. Norma Broussard for the personal injuries they received in a head-on collision of the Greyhound bus they were riding and an All Woods lumber company truck near Vinton, Louisiana, on August 27, 1965. The collision was a violent one; several persons were killed and a number of others were seriously injured.

Mr. Leo Broussard, husband of Norma, was also a party plaintiff in the trial court, but the judgment in his favor was, after remittitur, paid by Greyhound. All Woods and its owners were originally parties defendant but were dismissed before the trial began. Greyhound admitted liability prior to trial, so the amount of damages was the only matter contested in the trial court.

Part of Greyhound's appeal is based on the trial court's having permitted Mrs. Duhon and others to offer evidence that while she was still in a hospital Greyhound filed a civil suit against her in Louisiana and that this caused her to suffer additional emotional upset and mental anguish; Greyhound asserts that such evidence was not supported by the pleadings and seeks a reversal of the judgment. Also, Greyhound contends that the judgment in favor of Mrs. Duhon for $182,851.88 is excessive and should be reduced. As to Mrs. Broussard, Greyhound asks that the judgment be reversed because the jury was asked to determine the loss of income from rent properties; in the alternative it asks for a remittitur in addition to the one already granted, contending that her recovery is excessive.

In an opening statement counsel for Mrs. Duhon told the jury that Greyhound had filed a suit (in Louisiana) against Juanette Duhon shortly after the accident in question and that the suit papers were served while Juanette Duhon was still confined in a hospital. Greyhound's attorney objected and asked that the jury be instructed to disregard the remark.

Greyhound's objection was overruled and its requested instruction was refused. The trial court then permitted Greyhound to amend its admission of liability to limit it to those damages proximately caused by the collision in question. The admission stated that Greyhound was engaged in the business of transporting passengers by bus in Texas and Louisiana, that on the occasion in question one of their buses collided with a truck, that "Mrs. Duhon and Mr. and Mrs. Broussard were passengers on the bus and they sustained injuries of varying degree. They certainly did not contribute to this mishap in any respect, and Greyhound recognizes a responsibility on its part to the Plaintiffs and does hereby agree and stipulate to respond and pay such reasonable damages as a jury shall find the Plaintiffs have sustained proximately caused by the collision in question, without regard to whether or not there was anything at all the bus driver could have

done in the exercise of a high degree of care to avoid the accident." The statement then contained a denial that the plaintiffs had been damaged to the extent that their petitions asserted and a general denial as to all material allegations not expressly admitted. It then stated:

"For special answer addressed to the Court only, defendant wishes to advise that nothing in the above and foregoing paragraphs is intended, nor should it be construed, as an admission of fault or negligence on the part of this defendant. Instead, the same is intended and it should be construed only as a stipulation that in this particular case (and in no other case) the plaintiffs may recover judgment against this defendant for such amount or amounts as their damages are finally determined to be, without the necessity for the plaintiffs proving or attempting to prove that this defendant was negligent or at fault in any respect on the occasion in question."

Greyhound then pleaded surprise as to the admission into evidence of testimony about the Louisiana suit and asked leave to withdraw its announcement of ready, but such leave was denied.

In response to Greyhound's request for a running objection, the trial judge then stated into the record that it was noted that defendant objects to any evidence concerning a suit filed in Louisiana by Greyhound Lines including among those parties served the plaintiffs in this case, the objection being on the grounds as already stated.

When Mr. Duhon was called as a witness by his wife's attorney he gave the following testimony on direct examination:

"Q Mr. Duhon, directing your attention to an occasion when your wife was in the hospital in Orange, were you served with a lawsuit of any kind?

"A Yes, sir, I sure was, sir.

"Q Who was the plaintiff in that case?

"A We were being sued, sir, my wife and I, by Greyhound.

"Q Tell me, at that time did you have a lawyer?

"A No, sir. That was the farthest thought from my mind, sir; getting my wife well was the first thought.

"Q You certainly had not retained us at that point, had you?

"A Sir, I had retained or talked to nobody.

"Q Did you discuss this matter with Juanette?

"A After I read it and tried to understand why that we were being sued because my wife was a passenger on the bus and why we would be sued, I felt it necessary to take it over, even in her condition, and have her read it, and she was completely upset because, as myself, she didn't understand it.

"Q And as a result of that action you retained us, is that correct?

"A Sir, I was given such short notice and never being involved in this respect before, I had to do something, and according to this I had to do it fast.

"Q How much notice were you given by Greyhound to appear in that lawsuit?

"A I believe, sir, it was fifteen days.

"Q In Louisiana?

"A Yes, sir.

"Q Did this apparently distress your wife?

"A Yes, it did because we didn't know where to turn or who to see."

Mrs. Duhon's testimony on this point on direct examination by her counsel was:

"Q There has been some testimony here about the fact, I think your husband testified and Dr. Davis indicated some testimony that you were sued by Greyhound while you were in the hospital?

"A Yes, that's what I understood the paper to read.

"Q When was that?

"A I think I was in the hospital about three weeks.

"Q That was three weeks after the bus collision Greyhound sued as plaintiff against you as defendant?

"A Yes.

"Q And at that time had you employed counsel to represent you?

"A No, I had not.

"Q Would you tell the jury whether or not you and your husband discussed it and found that you had to have someone to represent you?

"A After we received this summons, yes, we did discuss it.

"Q You were confined in the hospital at that time?

"A Yes.

"Q I think your husband testified that the papers read that you had fifteen days within which to answer that suit, is that correct?

"A Yes.

"Q And after that did you employ Mr. Woody and myself to represent you?

"A Yes, we did."

A psychiatrist, Dr. Harry K. Davis, of Galveston, testified on direct examination by Mrs. Duhon's attorney:

"Q Doctor, based on your examination, your appraisal of Mrs. Duhon, in all reasonable medical probability, assuming the fact that while in the hospital she was sued by Greyhound, would this in and of itself cause extreme trauma to her?

"A Yes.

"Q And pain and suffering?

"Yes."

At the close of the evidence, when the court's charge was being prepared, Greyhound requested the following instruction: "In answering Special Issue No. 3 of the Court's charge, you are instructed that you may not take into consideration or award damages attributable to the filing of any suit by Greyhound Lines, Inc., or to the service of suit papers requiring the filing of an answer." It was refused by the court.

In the opening argument to the jury, an attorney for Mrs. Duhon said:

"And when you think about that mental anguish, ladies and gentlemen of the jury, think about Juanette Duhon lying in bed at Orange Memorial Hospital three weeks after this collision and being sued by Greyhound in a lawsuit in Louisiana which Greyhound was the plaintiff and poor Juanette Duhon was the defendant. Think about the mental anguish that caused her. She didn't even have an attorney at that time. As she and her husband testified, it wasn't until after that that they employed Mr. Woody and myself to represent them."

The petition on which the Duhons went to trial (supplemented to allege an increase in the amount of damages) asserted:

"As a result of the negligence and careless disregard for human life on the part of the Defendant Greyhound or the Defendant All Woods or both of said Defendants, the Plaintiff Juanette Duhon painfully suffered severe personal injuries and property damage.

### V.

"The Plaintiff Juanette Duhon would show that the collision previously mentioned herein was caused by Defendants Greyhound and All Woods and each of them collectively and separately, through their respective agents and employees, Blankenship and Gregory, while each of them was acting as such agent and employee in the course and scope of his employment for his respective employer, and would further show that each of the acts enumerated below, either singularly or concurrently with others, both of omission and commission, were negligent and constituted negligence, and were each and all a proximate cause of the collision made the basis of this suit and were each and all a proximate cause of the injuries and damages suffered by Plaintiff Juanette Duhon.

"The acts of negligence on the part of the Defendant Greyhound Lines, Incorporated, were and are as follows: * * *."

The allegations of negligence on the part of Greyhound are fourteen in number. Each alleges a specific act of negligence on the part of the bus driver, a Mr. Blankenship, in his operation of the bus before the collision.

Paragraph VII stated:

"Because of the negligence of the Defendants, Plaintiff Juanette Duhon suffered a three-way whiplash injury to her spine and neck; severe pain, inflammation and soreness to the muscles of her back; a stiffness in her neck; severe and painful damage to the cartilage of her right knee; frequent pain and popping in the upper portions of her neck; weakness and paleness caused from the overall excruciating pain; numbness in her right hand; bruises on her right knee, the right side of her cheek and jaw and other generalized bruises, all derived from Plaintiff Juanette Duhon being violently thrown and tossed about in the bus in which she was riding as a passenger at the time of the collision.

"Due to the horrible tragedy which she witnessed, Plaintiff Juanette Duhon also suffered a severe and traumatic nervous shock which produced and is still producing extreme nervousness and anxiety."

Mrs. Duhon's supplemental pleading contained the following:

"Plaintiff herein, refers to, affirms and supplements Paragraph X of Plaintiff's Original Petition, to allege that in addition to the matters alleged in Paragraph X of Plaintiff's Original Petition that since the date of filing of Plaintiff's Original Petition, Plaintiff Juanette Duhon has suffered additional extreme excruciating pain, suffering and mental anguish aggravated by long periods of confinement in the hospital which have resulted in distress, despair, uncertainty and loneliness; further, the Plaintiff Juanette Duhon will, in all reasonable probability, continue to suffer physical pain, mental anguish, and emotional distress for a long time in the future, if not for the balance of her life. This unrelenting physical pain and nerve racking mental and emotional distress that Juanette Duhon has suffered and will continue to suffer entitles the Plaintiff Juanette Duhon to recover the amount of Four Hundred Seventy-Four Thousand Five Hundred Ninety-Eight and Seventy-Three/100 ($474,598.73) Dollars for pain and suffering."

Greyhound's first three points of error complain of 1) the admitting of evidence that Greyhound filed the civil suit against Mr. and Mrs. Duhon in Louisiana after the accident in question and served suit papers while Mrs. Duhon was still in the hospital, 2) the court's refusal to orally instruct the jury to disregard the reference in the opening statement to the Louisiana suit and service of suit papers at such time and 3) the refusal of the written instruction that in determining dam-

ages the jury could not consider or award damages attributable to the filing of the suit by Greyhound or the service of the suit papers. Each of these three points was based on the following:

"(a) Mrs. Duhon sued for only such damages as were proximately caused by specifically alleged acts and omissions of negligence on the part of Greyhound's driver, none of which included the filing of any civil suit, thus the evidence was not supported by the pleadings.

"(b) Mrs. Duhon sued for only such damages as were proximately caused by the collision in question and did not allege in her petition the filing of any civil suit at a later date, and so such evidence was not supported by the pleadings.

"(c) Any damages arising out of the filing of such suit resulted solely from such act and were not actually caused by the specifically alleged acts and omissions of negligence of Greyhound's driver, nor from the collision itself, thus such evidence was not supported by any pleadings.

"(d) Greyhound's driver could not reasonably foresee on the occasion in question that his alleged acts and omissions of negligence would cause the attorneys for Greyhound to later file a civil suit against one or more passengers on the bus, nor could he reasonably anticipate the filing of such suit would damage or injure such passengers.

"(e) Greyhound had an absolute privilege to file such civil suit without being held accountable in damages unless it be shown that the filing of the same amounted to civil malicious prosecution, which was neither alleged nor proven by Mrs. Duhon.

"(f) Any cause of action Mrs. Duhon might have otherwise had against Greyhound for the filing of such suit was barred by limitations when the evidence in question was offered."

We sustain these three points. "When items of special damage are claimed, they shall be specifically stated." Rule 56, Texas Rules of Civil Procedure. The evidence and the jury argument show that the jury was being asked to award additional damages to Mrs. Duhon because the filing of the suit in Louisiana and service of the suit papers on her husband while she was still in the hospital caused her additional mental anguish. We hold that in this she was asking for special damages and that such special damages were not specifically stated in her pleadings in compliance with Rule 56.

"* * * damages which naturally and necessarily flow or result from wrongful conduct alleged are regarded in legal contemplation as general damages, and need not be expressly pleaded. On the other hand, special damages are such as are the natural but not the necessary result of the act complained of, and are not recoverable unless specially pleaded." Harvey v. Crockett Drilling Co., 242 S.W.2d 952 (Waco, Tex.Civ.App., 1951, no writ), citing cases. See also 17 Tex.Jur.2d 261, Damages, § 195, and since Rule 56 is Federal Rule 9(g) unchanged, see 1A Barron and Holtzoff (Wright), Federal Practice and Procedure 238, § 308.

The additional mental anguish suffered by Mrs. Duhon as a result of the filing of the Louisiana suit and the serving of papers while she was in the hospital was not a natural and necessary result of the collision.

"In cases of tort it may be said that special damages are such consequences of an injury as are peculiar to the circumstances and condition of the injured party * * *." 25 C.J.S. Damages § 2, p. 625. Although there is nothing in evidence to show the exact nature of the Louisiana suit, Dr. Davis' testimony shows that the mental anguish it caused Mrs. Duhon was such a consequence of her original injury as was peculiar to her circumstances and condition.

■ We also hold that under the evidence adduced the filing of the Louisiana suit and service of the suit papers when Mrs. Duhon was still hospitalized are privileged matters and could not have been properly raised by pleadings in view of the fact (conceded by appellees' counsel) that the filing of such suit constituted neither a civil malicious prosecution nor an abuse of process. The general rule is that the institution and prosecution of a civil suit afford no cause of action for damages against the party suing except in cases of malicious prosecution or abuse of process. Robert and St. John Motor Co. v. Bumpass, 65 S.W.2d 399 (Eastland, Tex.Civ. App., 1933, error dismissed); 1 Tex.Jur.2d, Actions, §§ 17, 18.

■ Having sustained these points, we turn to the question of whether the consideration by the jury of damages arising from the Louisiana suit can be cured by remittitur. The testimony of Dr. Davis and the jury arguments we have quoted would allow the jury to award a large sum for the occurrences in question. In ruling on the motion for new trial, the trial judge commented on the acute state of Mrs. Duhon's emotional and mental distress. Since it is impossible for us to determine how much the jury allowed for that part of her distress caused by the matter complained about, the judgment in favor of Mrs. Duhon must be reversed. Dallas Railway & Terminal Co. v. Gossett, 156 Tex. 252, 294 S.W.2d 377 (1956).

■ There should be expressly excluded from the jury's consideration by an affirmative charge any evidence which cannot properly be considered in assessing damages. Tyler Mirror Co. v. Simpkins, 407 S.W.2d 807 (Tyler, Tex.Civ.App., 1966, writ ref., n. r. e.); Dallas Railway & Terminal Co. v. Ector, 131 Tex. 505, 116 S.W.2d 683 (1938).

Our reversal of the judgment as to Mrs. Duhon makes it unnecessary for us to pass on appellant's fourth point, which complains of Greyhound's not being allowed to withdraw its announcement of ready, or on its sixth point, which asserts that the verdict in her favor was excessive.

■ Appellant's fifth point of error alleges that the trial court erred in overruling Greyhound's amended motion for new trial as to Mrs. Broussard on condition of her remitting the sum of $2,600.00, purportedly representing the sum awarded to her as a result of the court's erroneous instruction concerning rental income, because:

"(a) The amount of damages awarded Mrs. Broussard as a result of such erroneous instruction cannot be determined with any reasonable degree of certainty, thus making the error incurable by remittitur.

"(b) The jury could and probably did award Mrs. Broussard more than $2,600.00 as a result of the Court's erroneous instruction.

"(c) The Trial Court's Conclusion that $2,600.00 is the largest amount the jury could have awarded as a result of such erroneous instruction is contrary to the great weight and preponderance of the evidence and is not supported by sufficient evidence.

"(d) The Trial Court's conclusion that $2,600.00 is the largest amount the jury could have awarded as a result of such erroneous instruction is not supported by any evidence and conclusively shows the contrary."

The only testimony about the rent property was given by Mr. and Mrs. Broussard. She testified that they had "eighteen to twenty renters", she was the manager of the apartments and trailers, was the one who showed them to prospective tenants, she saw to it that her husband or some repair man made any necessary repairs and she did the bookkeeping. Mr. Broussard testified that they were showing a small profit before the collision, but not now; the loss as a result of not being able to keep up with these units amounted

to about $1,400.00 in 1967. In 1966 it was in the vicinity of $1,000.00 or $1,200.00. Their income tax returns reflected a $35.00 loss on the rental property for 1965 and a $574.00 loss for 1966. He said his wife couldn't show the units as well as before, so they have more vacancies, more upkeep expense and the loss is getting bigger. He testified that he reported on his income tax return a 1967 loss of $1,274.13.

In the damage issue submitted to the jury as to each of the Broussards there was included an inquiry as to any loss of income from rental property, if any, in the past. Greyhound's objection was overruled, but when Greyhound's motion for new trial was overruled, a remittitur of $2,600.00 was ordered by the trial court on the part of Mr. Broussard and another of $2,600.00 on his wife's part. The court stated that such $5,200.00 was the maximum amount that the jury could have considered as attributable to the loss of rental income.

We agree with the trial court's statement. Appellant urges that the jury might have awarded damages for the last four months of 1965 and the first 29 days of 1968, but we find no basis for such assertion, and no evidence was offered as to any loss attributable to either period. Appellees' counsel argued for future losses and for an anticipated loss when the units were sold (asking for a total amount of $5,000.00), but the issues were clearly restricted to income losses incurred from the date of the collision to the date of the trial. We cannot be sure the jury awarded them as much as $5,200.00 for this item, but it seems clear the jury awarded them no more. We overrule appellant's fifth point.

■ Appellant's seventh point complains that the verdict in favor of Mrs. Broussard was grossly excessive and a new trial should be ordered or a remittitur granted. The jury verdict for Mrs. Broussard was for $31,700.00, which was increased by $2,486.74, the amount stipulated to cover her past medical expenses and was diminished by the remittitur of $2,600.00, so that the amount appealed from is $29,100.00 (excluding past medical).

■ In determining whether the verdict was excessive we will view the evidence in support of the award in the light most favorable to the award. 17 Tex.Jur.2d 407, Damages, § 333; McMillen Feeds, Inc. of Texas v. Harlow, 405 S.W.2d 123 (Austin, Tex.Civ.App., 1966, writ ref., n. r. e.).

Mrs. Broussard is a rather heavy woman. She was seated by a window near the rear of the bus. She was knocked to the floor of the bus by the impact and was rendered unconscious. She remembers being urged to get out of the bus because of the danger of fire. The windows in the rear of the bus are high above the ground, and her size made it hard for her to get out of them. She fell out or got out somehow and again regained consciousness to find that she had been dragged down the road away from the bus.

Mrs. Broussard was nauseated and felt extreme pain on the right side of her head. She saw the dead and the other injured people around her. She spent about 28 days in three different hospitals during the latter part of 1965 being treated for head, neck, shoulder and back pains. She had multiple bruises, was highly nervous, had many severe headaches, nausea, hallucinations, fainting spells and nightmares. She had a severe cervical strain, blurred vision and spells of dizziness. She spent many weeks in bed. She still uses a cervical traction device at home, wears a neck brace and takes medication to relieve the pain in her shoulder and neck. She states that she is still very nervous, sleeps very little and is unable to work. She earned about $94.00 per week by working only two days a week for about ten weeks just before the collision. Life expectancy tables reflect that a woman her age (35) had a life expectancy of 41.84 years.

Greyhound admitted liability, so there was no evidence of how the collision occurred,

and we find only the Louisiana suit (as to the Duhons) and one photograph of a dead woman in the record which could give rise to any feeling of prejudice or passion on the part of the jury in answering Mrs. Broussard's damage issue.

■ Wholly apart from the evidence of her decreased earning capacity, she testified as to a considerable amount of pain and emotional distress, some of which still persists. When they will cease is uncertain. Her past medical expense, as noted, has been almost $2,500.00. The amount of an award for mental anguish and physical pain is not subject to exact measurement but is a matter for jury determination in the first instance, and the courts are reluctant to disturb a finding supported by substantial evidence. Robinson v. Ashner, 357 S.W.2d 611 (Ft. Worth, Tex.Civ.App., 1962), aff'd 364 S.W.2d 223 (Tex.) We have carefully considered the amount of damages approved by Texas courts in other personal injury cases as guideposts, and we hold that the evidence supports the award in favor of Mrs. Broussard (as diminished by remittitur in the trial court).

Mrs. Broussard has filed a cross-point claiming that the remittitur of $2,600.00 should not have been required, because a) there was no erroneous instruction concerning loss of income from rental property given by the court, b) the maximum amount the jury could have awarded for such loss was $2,600.00, and such amount has already been deducted by the trial court from the judgment awarded to Mr. Broussard, c) Greyhound waived any right to a remittitur as to Mrs. Broussard by accepting the remittitur as to Mr. Broussard, and d) payment of the judgment to Mr. Broussard after it was reduced by remittitur estops Greyhound from receiving the benefit of an additional remittitur.

■ We overrule the cross-point. Mrs. Broussard cites no cases in support of it and we find none. Even if we consider "income" only in the sense of net income, or profit, the ordering of a remittitur was correct. Loss of profits from a personally operated business is not the proper measure of damages in a personal injury action but may be considered in determining the extent of an injured party's diminished earning capacity. Dallas Railway & Terminal Co. v. Darden, 38 S.W.2d 777 (Tex. Com.App., 1931); Dallas Railway & Terminal Co. v. Guthrie, 146 Tex. 585, 210 S.W.2d 550 (1948).

Among other items of damages, the jury was asked to find the amount of Mr. Broussard's loss of rental income and in another issue the amount of such loss to Mrs. Broussard. We hold that the trial judge was correct in deciding he could make certain that the jury's award as to rental income had been eliminated by ordering a remittitur of all the jury could have awarded as to this loss under the evidence. Central Power & Light Co. v. Graddy, 318 S.W.2d 943 (First Houston, Tex.Civ.App., 1958, no writ). Mr. Broussard has remitted, and Mrs. Broussard filed her remittitur in the trial court and does not ask for a reversal on appeal. Under these circumstances we find nothing that Greyhound has done in not appealing from Mr. Broussard's judgment which would constitute a waiver or estoppel as to Mrs. Broussard's remittitur.

The judgment of the Trial Court in favor of Mrs. Broussard is affirmed; the judgment as to Mrs. Duhon is ordered severed and is reversed and remanded.