**STAR CORPORATION, Appellant,**

v.

**GENERAL SCREW PRODUCTS COMPANY, Appellee.**

No. 16153.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Oct. 11, 1973.

Rehearing Denied Nov. 8, 1973.

Kronzer, Abraham & Watkins, W. James Kronzer, Bohn E. Phillips, Houston, for appellant.

Louis B. Paine, Jr., Robert Hayden Burns, Houston, for appellee; Butler, Binion, Rice, Cook & Knapp, Houston, of counsel.

COLEMAN, Chief Justice.

This is a suit brought by E. G. Ricketts as the sole stockholder of Star Corporation, a defunct corporation, to recover funds paid by Star Corporation for the benefit of G. S. P. Corporation, a wholly owned subsidiary of Star Corporation. The name of G. S. P. Corporation has been changed to General Screw Products Company. The case was tried to a jury and resulted in a take nothing judgment.

A company founded by W. A. Kenyon as a sole proprietorship was later incorporated under the name General Screw Products Company. In 1965 the business was conducted from a plant located in Houston, Texas, on real estate owned by the Eleanor Realty Company, a corporation owned by W. A. Kenyon, his wife, and a trust for his daughter.

The capital stock of Star Corporation was owned by Edward W. Plodzik and E. G. Ricketts in equal proportions. In 1965 Plodzik, on behalf of Star Corporation, reached an agreement with Kenyon whereby Star Corporation was given an option to purchase General Screw Corporation, Eleanor Realty Company, and certain equipment, supplies and machinery. The agreement recited that Star had paid to Kenyon the sum of $50,000.00, which he was entitled to keep in the event the option was not exercised prior to January 17, 1966. In the event the option was exer-

cised, the money was to be returned to Star or applied on the purchase price as directed by Star.

On January 13, 1966, a contract of purchase was consummated between Star Corporation, on the one hand, and W. A. Kenyon, Eleanor B. Kenyon, and the trustees of a trust for the benefit of Margaret Kenyon for the purchase of the property encompassed by the option agreement. The agreement provided that "Star shall organize prior to the closing a wholly owned subsidiary . . . for the purpose of entering into the transactions contemplated hereby." It provided that the property would be conveyed to the subsidiary, and that Star would cause the subsidiary to purchase and pay for the property. Star covenanted to cause the subsidiary to maintain its corporate existence until January 1, 1967, and, so long as the indebtedness remained unpaid, to retain ownership of the capital stock of the subsidiary. Star agreed that it would not permit the subsidiary to make any loan to Star or any of its officers, directors, or stockholders, or to pay any dividends.

The agreement further provided that upon the organization of the subsidiary and its ratification of the agreement by resolution, the terms and provisions of the agreement would be binding upon the subsidiary without relieving Star from its obligations thereunder. The total purchase price was the sum of $675,000.00, payable $150,000.00 in cash and the balance in notes secured by the stock and equipment and guaranteed by Star, Plodzik and Ricketts. In addition there was a provision binding the subsidiary to employ Kenyon as its President, or in other specified capacities, at a stipulated salary for a period of five years.

On the same date an organizational meeting of the subsidiary (G. S. P. Corporation) was held. The initial Board of Directors consisted of W. A. Kenyon, E. G. Ricketts, and Edward W. Plodzik. The officers were W. A. Kenyon, President; Jack W. Cooper, E. G. Ricketts, and Edward W.

Plodzik, Vice Presidents; Janice Minter, Secretary and Treasurer; and Jean Hindman, Assistant Secretary and Assistant Treasurer. The minutes of the meeting reflect that the articles of incorportaion of the corporation had been filed in the office of the Secretary of State of the State of Texas on November 29, 1965. A form of a share certificate was submitted and was adopted as the certificate to be used by the corporation, and the secretary was directed to insert this form in the minute book.

The minutes state that Mr. Kenyon was chairman of the meeting and that he "announced" that Star Corporation had subscribed for 150,000 shares of the corporation's common stock, par value $1.00 per share, at a price of $1.00 per share. The minutes then recite that "upon motion duly made, seconded and unanimously carried, it was

"Resolved, that upon payment to the Corporation of a total of $150,000.00 cash, the President or any Vice President and Secretary or any Assistant Secretary are hereby authorized to issue to Star Corporation, a Texas Corporation, One Hundred Fifty Thousand (150,000) shares of common stock of the Corporation of a par value of $1 per share."

A resolution was then adopted approving, ratifying, and adopting the purchase agreement between Star Corporation and the Kenyons, and authorizing the issuance and delivery of the corporation's notes in the sum of $525,000.00, payable to the Kenyons as provided in the agreement. Another resolution was adopted authorizing the officers of the corporation to take any and all action necessary to perform and carry out the purchase agreement.

On the same date a special meeting of the Board of Directors was called at which the name of G. S. P. Corporation was changed to General Screw Products Company.

An instrument entitled "Shareholder's Consent and Delegation," signed "Star Corporation by E. G. Ricketts, President," is included in the minute book, and reads:

"The undersigned, being the holder of record and owner of all the issued and outstanding shares of capital stock entitled to vote of G. S. P. Corporation, a Texas Corporation, does hereby consent to, ratify, confirm and adopt all the acts of and resolutions adopted by the Board of Directors of the Corporation at the organization meeting of the Board of Directors held on January 13, 1966, as shown by the foregoing minutes of such meeting."

Mr. Ricketts testified that on January 10, 1966, he was asked by Mr. Plodzik to attend a meeting on January 13, 1966, to discuss an option to buy General Screw. Gladys Westbury, a director of Star Corporation, was also asked to attend the meeting. At the meeting the purchase agreement was read aloud. For the first time Ricketts learned that Star had deposited $50,000.00. He then asked whether the deposit would be forfeited if Star Corporation failed to purchase General Screw. When he was informed that the deposit would be forfeited, he walked away from the desk and was joined by Mr. Plodzik and Gladys Westbury. He had previously been informed that G. S. P. Corporation was merely a vehicle by the use of which a tax saving could be gained for Mr. Kenyon. He told Plodzik that Star Corporation did not have $150,000.00 "to kick around." Plodzik told him not to worry because the money would "come right out of G. S. P. back to you."

Mr. Ricketts also testified that at the suggestion of Mr. Plodzik the minutes of the meeting prepared by the attorneys were not read. He didn't see anything and was not told anything about a stock subscription, and he had not signed one. There was no discussion about stock.

Mrs. Westbury was an employee of Star Corporation. She owned no stock in the corporation. She was in charge of bookkeeping for the company. She first

learned that a $50,000.00 check had been issued on the company funds at the January 13 meeting. At the meeting she stated that Star Corporation could not meet its obligations if $150,000.00 was taken from its account. She stated that it was agreed at the meeting that General Screw Products Company would repay the $150,000.00. All of the members of the Board of Directors of G. S. P. Corporation and of Star Corporation were present at the meeting.

It was stipulated that (1) in consideration of the option agreement Star Corporation paid to W. A. Kenyon by check the sum of $50,000.00; (2) Star Corporation issued its check in the sum of $100,000.00 to G. S. P. Corporation, which corporation received the funds represented thereby and used them to pay W. A. Kenyon et al, the consideration for the purchase of General Screw Products Corporation; (3) G. S. P. Corporation executed three promissory notes representing the balance of the consideration due to Kenyon et al; (4) on or about July 22, 1966, Kenyon sent a letter to the new General Screw Products Company, Star Corporation, Ricketts, and Plodzik calling attention to a default in payment on the notes and his right to mature same, and demanding payment; (5) in response to this demand Star Corporation on August 12, 1966, executed and delivered three checks in the aggregate sum of $52,500.00 to Kenyon et al; (6) the checks were honored by the bank and the proceeds received by Kenyon et al; (7) on October 3, 1966, Star Corporation issued its check to General Screw Products Company in the amount of $30,000.00, which check was honored by Continental Bank and the proceeds received by General Screw Products Company; (8) the checks referred to in (5), (6), and (7) were drawn on an account established on or about February 21, 1966, by Star Corporation, General Screw Products Company, Specialty Rental Tools, Inc., and American Towing Company; (9) the cause of action asserted by the plaintiffs against General Screw Products Company is restricted to transactions related to the six checks previously referred to above; recovery of damages, if any, shall not exceed $232,500.00; and General Screw Products Company is not entitled to any offsets.

It was also stipulated that Edward W. Plodzik was authorized to execute, and did execute on behalf of General Screw Products Company, an agreement with plaintiffs and others, a copy of which was attached to the stipulations designated as Exhibit 16.

Exhibit 16 is a letter agreement signed by Edward W. Plodzik and addressed to E. G. Ricketts and Star Corporation, which was accepted by E. G. Ricketts for himself and Star Corporation. It provides, in part, that:

"2. You have agreed and confirm that all shares of stock Star owned or may have owned in Specialty Rental Tools, Inc., American Towing Company, Inc., and General Screw Products Company have been transferred to me prior hereto and that you have no further rights therein. You ratify and confirm that neither of you had any claim in and to any of the capital stock of said three corporations, and if at the present time you have any interest in such capital stock it is hereby released to me.

"The making of this agreement and recitation shall not in any way affect, diminish or alter any claims or causes of action for money which either of you may have against me or the three named corporations and Ray Industries on account of prior transactions or advancements between them;

". . . .

"(5) It is further agreed that as to all interrelated obligations of the parties, as well as obligations of any of the parties to third parties, the ultimate responsibility therefore shall fall upon the party or parties who ultimately received the money or funds. . . . When obligations are discharged proper credit shall be giv-

en therefor in the adjustment of the accounts. . . ."

W. A. Kenyon testified that G. S. P. Corporation or General Screw Products Company received the proceeds of the six checks involved in this case, and that this money did not represent gifts to the corporation. He testified that at the organizational meeting he saw a G. S. P. stock certificate for 150,000 shares delivered either to Mr. Plodzik or to Mr. Ricketts. He said that every document signed at the meeting was read aloud by Mr. Loftin. He signed one G. S. P. stock certificate. No G. S. P. Company stock certificates were introduced. On cross-examination he was somewhat uncertain as to the number of shares represented by the certificate. A stock certificate purporting to be Certificate No. 1 of General Screw Products Company, Inc., was produced and appears to have been prepared as a certificate for six thousand shares. The typed words "six thousand" have a line drawn through them and the figure "1500" are written in ink above them. The typed figures "6,000" have been crossed out and "1500" has been written in ink above them. The certificate is dated January 14, 1966, and is signed by W. A. Kenyon, President, and Jan Minter, Secretary-Treasurer. The stub for Certificate No. 1 in the stock book shows a certificate for 150,000 shares issued to Star Corporation dated 1–13–66. All figures were written in ink. The date appears to have been altered from 1965 by writing a "6" over the "5". In the figures 150,000 the 1 and the 5 are written in darker ink. A line is drawn through "150,000" and written above is "675,000," through which a line has been drawn and the number "150,000" written above it. On the back of Certificate No. 1 appears the words "Certificate for 6,000 shares General Screw Products, Inc. issued to Star Corporation dated January 14, 1966." The transfer form was not filled out or executed.

Certificate No. 2 dated August 8, 1966, was issued to Ray Industries, Inc. for 150,000 shares of General Screw Products Company stock. The stub reflects that the 150,000 shares were transferred from Star Corporation by transfer of original Certificate No. 1 dated 1/13/66 for 150,000 original shares. Certificate No. 2 is signed by Edward W. Plodzik, Vice President and Jean Hindman, Secretary.

Mr. Kenyon testified that he did not act as chairman of the meeting as the minutes recite and that Jean Hindman did not prepare the minutes of the meeting. He said that all of the papers were prepared in advance by the lawyers, but that they were read aloud before they were signed. He did not remember whether there was a written stock subscription agreement.

There was evidence that Star Corporation represented to the Continental Bank on February 15, 1966, in connection with an application for a loan that it would give as part of the security for the loan all of the capital stock of General Screw Products Company, and that the certificate pledged was for 6,000 shares.

With reference to the purchase of (old) General Screw Products Company, the plaintiffs alleged that Star Corporation "advanced" $150,000.00 to G. S. P. Corporation. In its answer the defendant alleged that Star Corporation "invested" $150,000.00 in the capital stock of G. S. P. Corporation, and that this money was paid to Kenyon et al. The issue was clearly drawn by the pleadings. However there was no direct testimony that Star Corporation loaned the $150,000.00 to G. S. P. Corporation, or that Star Corporation paid the money to G. S. P. Corporation for stock. The evidence raises an issue of fact as to whether the money was intended as a loan or as a payment for stock.

The only issue submitted to the jury reads: "Do you find from a preponderance of the evidence that G. S. P. Corporation agreed to repay Star Corporation the $150,000.00 which had been paid on or before January 13, 1966?" The jury answered: "we do not."

The issue submitted was not the controlling issue in the case. If G. S. P. Corporation was legally obligated to repay the advances, it is immaterial whether it had agreed to repay. An obligation to repay would arise as a matter of law from the evidence that G. S. P. received $150,000.00 from Star Corporation, and that the money was not a gift, except for the evidence from which an inference could be drawn that the money was paid to G. S. P. as consideration for the issuance of stock. Weathersby v. Texas & Ohio Lumber Co., 107 Tex. 474, 180 S.W. 735 (1915); Okeechobee County, Fla. v. Nuveen, 145 F.2d 684 (Court of Appeals, 5th Cir. 1944); Southwest Gas Co. v. Doney, 99 S.W.2d 1107 (Tex.Civ.App.—Galveston 1936, writ dism'd); 19 C.J.S. Corporations § 1129.

In a case involving the question of whether money advanced by a subsidiary to its parent corporation constituted loans or dividends, Ramo, Inc. v. H. E. English, 17 Tex.Sup.Ct. Journal, p. 7, the Supreme Court said:

"The crucial and controlling question is whether the advances were loans or dividends . . . This question can be answered only by making a choice between two conflicting inferences that are raised by the facts proved. It could have been submitted by an issue inquiring whether the handling of the transactions as loans was a subterfuge, or by an inquiry that enabled the jury to find, under suitable instructions, that the advances were dividends rather than loans. The question was not resolved, however, by the finding in response to Special Issue No. 18. The fact that Ramo did not intend to repay the advances is not controlling, and the jury's answer to the issue was properly disregarded by the trial court. If the transactions were bona fide loans and Ramo was legally obligated to repay on demand, the fact that Ramo did not intend to repay would not alter the legal effect of the transaction . . . Since no issue submitting the

dividend question was given or requested, this independent ground of recovery must now be deemed as waived. Rule 279, T.R.C.P."

While the jury's failure to find that G. S. P. Corporation agreed to repay Star Corporation did not establish that G. S. P. Corporation was not legally obligated to repay Star Corporation, no other issues were submitted or requested to establish such a legal obligation.

Had the issue submitted been answered by the jury in the affirmative, this issue would have supported a recovery for the plaintiffs. A finding of an agreement to repay would not have been consistent with the defendant's contention that the money was paid as the consideration for capital stock in G. S. P. Corporation. The plaintiffs contend that the jury's answer to the issue submitted is so against the great weight and preponderance of the evidence as to be wrong and unjust.

The only evidence supporting an implicit or an express agreement to repay must be found in the testimony of Mr. Ricketts concerning his conversation with Mr. Plodzik and Mrs. Westbury at the organizational meeting of G. S. P. Corporation, and the testimony of Mrs. Westbury that it was agreed at the meeting that General Screw Products Company would repay the money. At that time Mr. Plodzik, Mr. Ricketts, and Mr. Kenyon were directors of G. S. P. Corporation. Mr. Kenyon was President of the Company and the Plodzik and Ricketts were vice-presidents. The authority of the vice-presidents was not established by the evidence. There is no evidence that Mr. Kenyon agreed on behalf of the corporation to repay the money other than the testimony of Mrs. Westbury, who did not name the parties to the agreement. It does not appear that the Board of Directors took any official action on the matters. There are circumstances which indicate that Mr. Kenyon would not have agreed to repayment out of the funds of General Screw Products Company. The contract

of sale prohibited G. S. P. Corporation from making loans to Star Corporation or paying dividends before the payment of the notes executed as consideration for the purchase. However Mr. Kenyon was present at the meeting and testified at the trial. He was not questioned about such an agreement. The evidence suggests that while the corporate structures of the inter-related companies were maintained, business dealings between them was conducted on an informal basis. Financial records of Star Corporation corroborate the testimony of Mr. Ricketts and Mrs. Westbury that Star Corporation did not have funds with which to make a long term investment of the magnitude involved.

■ As a general rule, the authority of the directors or trustees is conferred upon them as a board. A majority of them in their individual names cannot act for the board itself and bind the corporation. In order to exercise their powers they must meet so that they may hear each other's views, deliberate, and then decide. They must act as an official body . . . 19 Am.Jur.2d, Corporations, § 1118; See 14 Tex.Jur.2d, Corporations, § 306.

An agreement between Mr. Plodzik, Mr. Ricketts, and Mrs. Westbury that G. S. P. Corporation would repay Star Corporation the money it advanced for use in purchasing General Screw Corporation would not constitute an agreement on the part of G. S. P. Corporation. However the evidence is clear that Mr. Plodzik occupied the position of the promoter of the new Corporation. He was an officer and director of both Star Corporation and G. S. P. Corporation. Plodzik and Ricketts formed a majority of the Board of Directors of G. S. P. Corporation and were also officers of the Corporation. If there was an agreement between them for the repayment of the money advanced by Star Corporation, their knowledge of the agreement would be imputed to G. S. P. Corporation. United States Fidelity & Guaranty Co. v. San Diego State Bank, 155 S.W.2d 411 (Tex.Civ. App.—El Paso 1941, writ ref.); Vogel v.

Zipp, 90 S.W.2d 668 (Tex.Civ.App.—Austin 1936, err. dism'd). The subsequent acceptance by G. S. P. Corporation of the $100,000.00, and of the benefit of the additional $50,000.00 paid by Star Corporation to Kenyon et al in connection with the option agreement with knowledge of the agreement to repay would constitute ratification or adoption of the agreement. Dealers' Granite Corporation v. Faubion, 18 S.W.2d 737 (Tex.Civ.App.—Austin 1929); Phil H. Pierce Co. v. Rude, 291 S. W. 974 (Tex.Civ.App.—Dallas 1927, writ dism'd w. o. j.).

■ The agreement to repay, if established by the evidence, would be binding on G. S. P. Corporation. It is necessary, therefore, to consider appellants' point that the answer made by the jury to the special issue is so contrary to the great weight of the evidence as to be clearly wrong and unjust. We conclude that it was. The testimony of Mr. Ricketts and Mrs. Westbury, if believed, establishes the agreement. Evidence to the contrary consists of the circumstance that there was in the minutes of the organizational meeting a recitation that Star Corporation had subscribed to 150,000 shares of G. S. P. Corporation stock, which Mr. Ricketts, President of Star Corporation and present at the meeting, failed to have corrected if it was in error. The testimony of Mr. Kenyon that a stock certificate for 150,000 shares was issued to Star Corporation, and the evidence that $150,000.00 was advanced by Star to G. S. P. are also circumstances supporting the answer. There is no evidence that the stock of G. S. P. Corporation had a par value, nor did the announcement concerning the stock subscription specify the consideration to be paid. Mr. Ricketts denied knowledge of any agreement by which Star subscribed to 150,000 shares of G. S. P. Corporation stock. There is evidence that the only stock certificate issued was for 6,000 shares. The testimony of Mr. Ricketts and Mrs. Westbury is supported by evidence of the financial condition of Star Corporation, and the

circumstances that Star Corporation could not expect to receive any return on such an investment until notes in the amount of $525,000.00 payable over a period of five years were fully paid. The answer made by the jury is understandable since they were not instructed that an agreement made by Plodzik and Ricketts would be binding on G. S. P. Corporation.

The parties stipulated that on or about July 22, 1966, W. A. Kenyon demanded payment of a past due installment on three notes executed by G. S. P. Corporation as part of the consideration for the purchase of General Screw Corporation, and guaranteed by Star Corporation; that "in compliance with such demand Star Corporation executed and delivered its three checks in the respective amounts of One Thousand Dollars ($1,000.00), Thirty Six Thousand Seven Hundred Twenty Dollars ($36,720.-00, Fourteen Thousand Seven Hundred Eighty Dollars ($14,780.00) to the payees of the notes . . . The Continental Bank did honor each of such checks for the face amounts thereof and the payees did receive cash in the amounts indicated on the face thereof."

They also stipulated that "on or about October 3, 1966, Star Corporation did draw, issue and utter its check to General Screw Products Company in the amount of thirty thousand dollars ($30,000.00). The Continental Bank did honor such check and cash in the amount of thirty thousand dollars ($30,000.00) was received by General Screw Products Company pursuant thereto . . ." The parties also stipulated that "General Screw Products Company is not entitled to any offset."

Appellee did not plead accord and satisfaction or payment. There was testimony that none of the checks represented gifts and that General Screw Products Corporation has not repaid Star Corporation for any of the funds represented by the checks. There is evidence that the account on which the checks were drawn was an account into which several corporations owned by Plodzik and Ricketts made de-

posits and on which each of the companies was authorized to draw checks. It appears that each month after the bank's statement for the preceding month was received, Mr. Plodzik would make a statement for each of the companies of the deposits, withdrawals and balance of that company in the joint account. Thus Star Corporation would receive from Mr. Plodzik such a statement together with its cancelled checks and deposit receipts. It did not receive such statements with reference to the activity of other companies in the account. The trial court admitted evidence, over the plaintiffs' objection, tending to show that the checks in question were charged by Mr. Plodzik to another company's balance in the account rather than that of Star Corporation and the contention is that the obligation discharged by the checks was not in fact paid by Star Corporation.

The stipulated facts establish that on or about July 22, 1966, Star Corporation paid the sum of $52,500.00 on an obligation of General Screw Products Company, and that on or about October 3, 1966, it advanced $30,000.00 to General Screw Products Company. An obligation on the part of General Screw Products Corporation to repay Star Corporation arose at that time. The testimony objected to tends to prove that Star Corporation was repaid the money expended in payment of the obligation of General Screw Products Company from the funds of a third corporation by accounting entries in the course of intercorporate accounting.

The defendant failed to plead payment, accord and satisfaction, or any other matter constituting an avoidance or affirmative defense as required by Rule 94, Texas Rules of Civil Procedure. Plaintiffs objected to the evidence tending to show payment or satisfaction of the debt on tenable grounds. No defensive issues were requested by the defendants or submitted by the trial court. The record establishes as a matter of law a sufficient basis for recovery on the four checks in the absence of an affirmative defense. Petroleum Anchor

Equipment, Inc. v. Tyra, 419 S.W.2d 829 (Tex.1967); Baxter & Co. v. Bolgar, 477 S.W.2d 407 (Tex.Civ.App.—Austin, writ ref., n. r. e.).

The testimony on which the defendants rely to defeat plaintiffs' recovery on the four checks was that of an accountant, Mr. Robert W. Smith. He examined the joint bank account for the two months during which the checks in dispute were issued and paid by the bank. He had before him certain exhibits, marked 54 through 278, which had been attached to the deposition of Mr. Plodzik. This deposition was introduced for the limited purpose of proving up the exhibits, presumably under the business records exception.

These exhibits concerned the joint account and included bank statements, deposit slips, the recapitulations of the bank statements prepared by Mr. Plodzik, and certain Star Corporation checks. Plaintiffs make no objection to the deposition testimony when the purpose for which it was introduced was limited. They did object to the testimony of Mr. Smith based on the Plodzik reconciliations as being hearsay and based on hearsay.

In Lewis v. Southmore Savings Association, 480 S.W.2d 180, 187 (Tex.1972), the court said:

"A useful analogy is presented by the rule as to testimony summarizing the contents of voluminous documents. The witness may testify of his extractions or of a net balance of accounts, but the full documents or records must 'be placed at hand in court, or at least be made accessible to the opposing party, in order that the correctness of the evidence may be tested by inspection if desired, or that the material for cross-examination may be available.' 4 Wigmore, Evidence § 1230 (3d ed. 1940). The Texas cases require that the source records be admissible and be produced. Dallas Railway & Terminal Co. v. Guthrie, 146 Tex. 585, 210 S.W.2d 550 (1948); Sherwin-Williams Co. v. Perry Co., 424 S.W.2d 940

(Tex.Civ.App.1968, writ ref'd n. r. e. with per curiam opinion 431 S.W.2d 310); Sam Bloom Advertising Agency v. Brush, 284 S.W.2d 265 (Tex.Civ.App. 1955, no writ)."

Mr. Plodzik had before him, when he testified by deposition, books of account and journals of Star Corporation, bank statements and other records. His testimony shows that in preparing the reconciliation statement he considered entries which he made on the books of Star Corporation and Specialty Rental Tools, Inc. The books of account of Specialty Rental Tools do not appear to have been produced at deposition hearing. The companies participating in the joint account were Star Corporation, General Screw Products Company, American Towing Company, Specialty Rental Tools, and Ray Industries. It does not appear that the checks issued by any of the companies, other than Star Corporation, were produced for examination by Mr. Plodzik, or that the books of account which he considered were properly authenticated. None of these books of account or cancelled checks were shown to have been produced in court. The testimony of Mr. Plodzik did not lay a sufficient basis for the introduction of the reconciliation statements which he had prepared. They were hearsay and entitled to no weight. The testimony of Mr. Smith and the exhibits which he prepared based largely on the Plodzik exhibits were objected to as hearsay, as being contrary to the stipulations of the parties, and as being based on hearsay. The trial court erred in admitting the testimony. Dallas Railway & Terminal Co. v. Guthrie, 146 Tex. 585, 210 S.W.2d 550 (1948).

The trial court erred in failing to sustain plaintiffs' motion for directed verdict and motion for judgment in the sum of $82,500.00, representing the total of the July and October 1966 checks. Accordingly, that part of the plaintiffs' suit which is based on the $50,000.00 advancement made by Star Corporation to G. S. P. Corporation, and the $100,000.00 check issued by

Star Corporation to G. S. P. Corporation, on or about January 13, 1966, is severed and as to such cause of action the case is ordered reversed and remanded to the trial court. Judgment is here rendered that E. G. Ricketts, individually and as representative of the stockholders of Star Corporation recover from General Screw Products Company the sum of $82,500.00 together with interest from the date of judgment in the trial court, October 9, 1972. The costs in the trial court and one-half of the costs on appeal are adjudged against General Screw Products Company.

The judgment of the trial court is reversed and judgment is rendered in part and in part remanded.