**Hans WELLS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 57566.**

Court of Criminal Appeals of Texas, Panel No. 1.

May 14, 1980.

On Rehearing Dec. 23, 1980.

James S. Bates, Edinburg, for appellant.

Oscar B. McInnis, Dist. Atty. and Robert D. Ralston, Asst. Dist. Atty., Edinburg, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and CLINTON, JJ.

## OPINION

ROBERTS, Judge.

Hans Wells was convicted of three counts of theft, each a felony of the third degree. The court assessed punishment at 5 years' confinement (probated) and a fine of $500.

Each count of the indictment alleged that on a day in 1974 the appellant obtained and exercised control over money "from 3–W Appliance Sales & Service, Inc., without the effective consent of the owner, 3–W Appliance Sales & Service, Inc., and with intent to deprive the said owner of said property." The appellant argues that there was no proof of the lack of consent of 3–W Appliance Sales & Service, Inc. We must agree. The only proof of lack of consent was the testimony of Ned Westmoland that he did not consent to the appellant's taking of the corporation's money.

In *Easley v. State*, 167 Tex.Crim. 156, 319 S.W.2d 325 (1959), proof of ownership was in question. The indictment alleged that H. E. Butt was the owner of stolen property. Butt himself testified that the owner was H. E. Butt Grocery Company, a corporation. Although Butt owned all the stock in the corporation he was not the owner of the property, as alleged. The proof failed.

In the instant case Westmoland, the appellant, and the appellant's brother were the incorporators of 3–W Appliance Sales & Service, Inc. It appears that Westmoland provided the capital and the Wells brothers ran the business. The appellant used corporate funds to buy some things for himself. A certificate of incorporation was issued by the Secretary of State, which brought the corporation into existence. Texas Business Corporation Act, Article 3.04. Although Westmoland may have financed the corporation, he was not the corporation. Proof that he did not consent was not proof that the corporation did not consent.

This Court frequently remarks that it is proper and better practice to allege in the indictment that corporate property was taken from the control of a natural person who acted for the corporation. E. g., *Castillo v. State*, 469 S.W.2d 572 (Tex.Cr.App.1971). Here the State chose not to do so. "It was the province of the state to . . . allege ownership, but in doing so it assumed the burden of establishing and proving ownership as alleged. The state has failed to perform that duty, and such failure requires a reversal of the case." *Easley v. State*, 167 Tex.Crim. 156, 319 S.W.2d 325, 325 (1959). The same is true of the duty to prove lack of consent as alleged. The trial court erred in denying the appellant's motion for a directed verdict.

The only just remedy is the direction of a judgment of acquittal. *Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1, 14 (1978). See also *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

The judgment is reversed and the cause is remanded with directions to enter a judgment of acquittal.

Before the court en banc.

## OPINION ON STATE'S MOTION
## FOR REHEARING

DOUGLAS, Judge.

On original submission, the panel reversed three theft convictions on the ground that the State failed to prove that "3–W Appliance & Service, Inc.," the alleged owner, did not consent to appellant's appropriating corporate funds to his own use.

If the panel opinion were adopted, it would in effect make a corporate charter a license to steal, because it would be impossible to commit theft from a corporation.

A corporation can be an owner of property under V.T.C.A., Penal Code, Section 1.07(24), which provides that "owner" means a person and that "person" means a corporation. It is obvious that a corporation cannot testify or give direct testimony of lack of consent.

Appellant was one of three incorporators of "3–W Appliance & Service, Inc.". He appropriated the corporate funds to his own personal use. There is only one way to prove lack of consent by the company and that is by circumstantial evidence. If the State cannot rely upon circumstantial evidence in such cases, one may steal when a corporation is alleged as an owner without fear of punishment.

Appellant initiated the idea of starting the appliance business and a corporation was formed for that purpose. The directors were appellant, Ned Westmoland and appellant's brother, Don Wells. Westmoland as "president" of the corporation supplied most, if not all, of the company's financing which was deposited in the corporate account. Appellant was secretary–treasurer of the company and managed the business. He drew a weekly salary. His brother Don was a vice president and was a salesman. Westmoland took no active part in the business.

The corporation was created to deal in appliances for the company and not for appellant's personal benefit. Prior to the alleged thefts, Don Wells was no longer associated with the company's business. Appellant managed the business and wrote checks on the corporate account.

On February 23, 1974, appellant issued a check on the corporate account in the amount of $3,745.75 to Yoder Motor Company to purchase a 1972 Cadillac. Westmoland gave appellant no authorization to issue the check, had no idea that corporate funds were used to purchase the Cadillac, and gave appellant no consent to purchase the Cadillac. There was no agreement between Westmoland and appellant to buy any automobile and appellant only had authority to write checks to "carry on the business properly." The certificate of title to the Cadillac was issued in appellant's name and not in "3–W's" name.

On August 8, 1974, appellant issued a check on the corporate account in the amount of $227.43 to Van Burkleo Motors to purchase a go–cart. Westmoland did not consent to the purchase of the go–cart, did not find out about it until 1975, and stated he could not "possibly think" of any need for the business to have a go–cart.

On February 7, 1974, appellant issued a check on the corporate account in the amount of $818.17 to Peace and Thorton Lumber Yard to pay for $363.26 worth of building and remodeling merchandise, among other things, previously purchased there. There was no agreement that such materials be purchased for personal use; and, Westmoland did not consent to their purchase. Moreover, to Westmoland's knowledge, none of these materials were ever used for business purposes.

This Court has held that ownership can be alleged in a corporation. In *Middleton v. State*, 476 S.W.2d 14 (Tex.Cr.App.1972), Humble Oil and Refining Company was alleged as the owner and the proof showed the ownership of the premises and the mercury in question to have been in the company. The conviction was affirmed.

*Easley v. State*, 167 Tex.Cr.R. 156, 319 S.W.2d 325 (1959), does not support a reversal. The indictment alleged: "[t]he corporeal personal property of H. E. Butt from the possession of Burgin Edens who was

holding the same for the said H. E. Butt. * * * " The proof showed the stolen money to have belonged to the corporation of H. E. Butt. The Court held that there was a variance because the proof showed a corporation as the owner and not H. E. Butt.

*Easley* supports the conviction in this case.

In *Carrillo v. State*, 566 S.W.2d 902 (Tex. Cr.App.1978), the Court held that water district board of directors had no authority to consent to the payment of money not made in return for goods or services for the district.

*Parnell v. State*, 170 Tex.Cr.R. 30, 339 S.W.2d 49 (1959), cert. denied 364 U.S. 828, 81 S.Ct. 66, 5 L.Ed.2d 55 (1960), was an embezzlement case. A crucial element was whether money was taken without consent of the owner. The Court held that a majority of the board of directors of a corporation could be guilty of embezzling corporate funds. In *Lewallen v. State*, 166 Tex.Cr.R. 287, 313 S.W.2d 293 (1958), this Court held that directors of a corporation could not ratify embezzlement from a corporation by acquiescence.

In *Giles v. State*, 97 Tex.Cr.R. 619, 263 S.W. 289 (1924), the defendant, the cashier and one of the five directors of the Park Springs bank, absconded with certain of the bank's assets. On appeal Giles contended that, as a director of the bank, the State failed to prove his lack of consent. This Court rejected that contention, stating:

"... We attach no importance to appellant's contention that it was necessary to prove his own consent to the abstraction of the bank's money in order to make out a case of guilt. The bank was a corporation, and each of the other four directors testified that the board of directors as such had given appellant no consent to abstract the funds of the bank, and that each of them as individuals gave no such consent. This sufficiently showed such abstraction as to violate the law. *United States v. Harper* (C.C.) 33 Fed. [471] 484; *Breese v. United States*, 106 Fed. [680] 685, 45 C.C.A. 535."

*Giles* is authority for upholding appellant's conviction in the present case.

The case of *Connelly v. State*, 93 Tex. Cr.R. 397, 248 S.W. 342 (1923), is also in point. There it is stated:

"... [I]n the first count in said indictment appellant was charged with embezzlement of $600, the property of the Citizens' National Bank of Sour Lake, Tex.; in the second count he was charged with embezzlement of $600, the property of Ambrose Jackson. The court submitted to the jury appellant's guilt as predicated only upon his embezzlement of the property of said bank. Complaint is made that the want of consent of said bank is not made to appear in the record. We are unable to assent to the soundness of the contention. The president of the bank testified that neither he nor any of the bank officials gave to appellant permission to embezzle, misapply, or appropriate $600 of the bank's money. Appellant was cashier of said bank at the time of the alleged offense, and $600 was turned over to him in his said capacity as an officer of the bank, and it appears from the record without dispute that he did not place said moneys with the other money of the bank, and that no entry of such deposit was ever made by him. Thereafter, and upon discovery of the irregularities, appellant was discharged from said position, and, upon investigation of the facts concerning the deposit of said money, the bank paid to Mr. Jackson, the depositor, the sum of $600. We think the testimony sufficiently showed the want of consent on the part of the alleged owner to the misappropriation by appellant."

Further, while the lack of consent on the part of the corporation could have been better developed, the lack of consent was sufficiently proved by circumstantial evidence. See *Garner v. State*, 51 Tex.Cr.R. 578, 105 S.W. 187, 188 (1907). See also, *Kirvin v. State*, 575 S.W.2d 301 (Tex.Cr. App.1978), and *Taylor v. State*, 508 S.W.2d 393 (Tex.Cr.App.1974).

For the above reasons, the State's motion for rehearing is granted, and the judgment is now affirmed.

CLINTON, Judge, dissenting.

The result reached on original submission is, in my judgment, the correct one, and its rationale, once the existence,[1] organization[2] and commencement of business[3] of and by 3–W Appliance Sales & Service, Inc. ("3–W") as a corporate entity are found,[4] is impeccable. The simple rule applied is that the proof must show the alleged owner did not consent to the challenged taking of the stated property.

Now, with considerable hyperbole, the opinion for the majority would grant the State's motion for rehearing and affirm the judgments of conviction. The claim made by the majority is belied by the very cases it relies on. Thus, in *Giles v. State*, 97 Tex.Cr.R. 619, 263 S.W. 289 (1924) the proof was made when "each of the other four directors testified that *the board of directors as such* "[5] had not consented to the felonious abstraction of funds under its control; similarly, in *Connelly v. State*, 93 Tex. Cr.R. 397, 248 S.W. 342 (1923), "The president of the bank testified that neither he nor any of the bank officials gave appellant permission to appropriate funds of the bank." Manifestly, the panel opinion does not grant a license to steal from a corporation; it just insisted that an essential element of the offenses be proven by the State beyond a reasonable doubt, and held the burden had not been met.

However, in my view the core problem here was created by the State when its representative determined to plead in the indictment that the owner of the appropriated funds was "3–W," a corporation, and, accordingly, I am not convinced that the right question has yet been asked: In 1974, when the alleged fraudulent transactions took place, were the abstracted funds owned by a legally functioning corporate entity, namely, "3–W"? In my opinion, they were not, for I am not satisfied the State proved, indeed could prove, "3–W" was that character of corporate business.

While it is certainly true that issuance of a certificate of incorporation by our Secretary of State is "conclusive evidence" of "the corporate existence," TBCA, Article 3.04, that does not necessarily mean that the named corporation has commenced *business*. To the contrary, TBCA imposes other requirements in order for the corporation to start up and engage in business.

Among others, TBCA, Article 3.05 prohibits a corporation from transacting "any business or incur any indebtedness," with exceptions not now pertinent, "until it has received for the issuance of shares consideration of the value of at least One Thousand Dollars ($1,000.00) consisting of money, labor done, or property actually received." Though Westmoland is shown to have paid into a bank account bearing the corporate name funds to operate the business, we do not know that his payments were understood to be "consideration" for issuance of shares of "3–W"–and it is undisputed that shares were never issued.

For another, TBCA, Article 3.06 dictates that after a certificate of incorporation is issued, "an organization meeting of the initial board of directors named in the articles of incorporation shall be held ... for the purpose of adopting bylaws, electing officers, and transacting such other business as may come before the meeting..." Again, all are agreed that the directors meeting was never held; there were no bylaws or resolutions; and while Westmoland is said to have been "president," his title is invariably surrounded by quotation marks. General authority to manage the business and affairs of a corporation "can only be jointly

1. Texas Business Corporation Act (TBCA), Article 3.04.

2. TBCA, Article 3.06.

3. TBCA, Article 3.05.

4. As well as the panel opinion, the majority opinion on rehearing proceeds on the premise that the "3-W" corporation was functioning as a legal entity.

5. All emphasis is mine unless otherwise indicated.

exercised by the directors as a board and not as individuals," and during a deliberative meeting.[6] Even a majority of directors "in their individual names" cannot act for the board itself, and bind the corporation,[7] *Star Corp. v. General Screw Products Co.*, 501 S.W.2d 374, 380 (Tex.Civ.App.–Houston [1st Dist.], writ refused n. r. e.). See also Armstrong, "Launching a Corporation in Texas," 41 Tex.B.J. 1085 (December 1978).

Without delving into the matter more, enough has been pointed out to persuade me that "3–W" never had any more than a paper existence and, as such, could not be and was not the owner of any funds. In this light, the judgment of conviction should be reversed.

I respectfully dissent.

ROBERTS and PHILLIPS, JJ., join.

---

**6.** Lebowitz, "Recent Developments in Texas Corporation Law- Part I," 28 Southwestern L.J. 641, 696.

**7.** The majority opinion lays down the dubious proposition that in a case such as this "the *only one way* to prove lack of consent ... is by circumstantial evidence," and concludes "further" that lack of consent was proved by that character of evidence, inviting us to "see" three prior decisions of the Court. That the decisions, one an embezzlement case and the others burglary cases, find their record evidence sufficient is of little help in the instant case, and the reader is left with the tantalizing exercise of guessing just what circumstantial evidence the majority deems enough to show lack of consent. As I have developed in the text, that Westmoland, even as an individual director, did not "consent" or "agree" to the purchases that were made, is of no moment, for one cannot act for a corporation unless he is in a board meeting with the other directors. Thus, what Westmoland did or did not do as an individual is utterly worthless as evidence of what "3 W" did or did not do. That, as I understand it, is the lesson of *Easley v. State*, 167 Tex.Cr.R. 156, 319 S.W.2d 325, 326 (1959) upon which the majority mistakenly relies.